UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ANGEL RUBIO,

                        Plaintiff,

      - against -

CITY OF NEW YORK, POLICE OFFICERS,
DARIN PAPEO, SHIELD #13812, VARGAS,
TAX REG #900114, "WINGATE" or
"WESTGATE," DETECTIVES TERRY BRAUN
and CHIOFALO and UNIDENTIFIED NEW YORK
CITY POLICE OFFICERS,

                     Defendants.

-----------------------------------------------------------------x

03-CV-1349 (SJ)(KAM)

<u>MEMORANDUM
AND ORDER</u>

A P P E A R A N C E S:

CHEDA & SHEEHAN
76-03 Roosevelt Avenue
Jackson Heights, NY 11372
By:    Thomas C. Sheehan
Attorney for Plaintiff

THE CITY OF NEW YORK
LAW DEPARTMENT
Office of Corporation Counsel
100 Church Street
New York, NY 10007
By:   Susan P. Scharfstein
Attorney for Defendants

JOHNSON, Senior District Judge

      Plaintiff Angel Rubio ("Plaintiff") brings this action for money damages against

the City of New York ("the City"), Police Officers Darin Papeo, Sharon Vargas, and

1

Daniel Wingate, Detectives Terry Braun and Anthony Chiofalo, and unidentified New York City Police Officers ("NYPD officers") (collectively, "Defendants"), pursuant to 42 U.S.C. § 1983 ("§ 1983"). Currently before this Court is Defendants' Motion for Summary Judgment. For the reasons discussed below, Defendants' motion is GRANTED and Plaintiff's Complaint is dismissed in its entirety.

### FACTUAL AND PROCEDURAL BACKGROUND

The undisputed material facts in this case are as follows. On the evening of March 18, 2000, Plaintiff and several friends celebrated his birthday at a local bar and restaurant in Brooklyn, New York, during which Plaintiff consumed large amounts of alcohol and cocaine. (Defs.' Local Rule 56.1 Statement at ¶¶ 2-4.) At the bar, Plaintiff and an acquaintance became involved in a heated dispute which escalated into a physical confrontation. (Id. at ¶¶ 5, 6.) As Plaintiff attempted to exit the bar after the men were separated, Plaintiff's acquaintance shot Plaintiff in the lower leg. (See id. at ¶¶ 7-14.)

Police arrived on the scene shortly thereafter and discovered Plaintiff, who appeared to be angry and incoherent, outside of the bar with blood on his forehead and a gunshot wound to his leg. (Id. at ¶¶ 12, 13.) Upon their arrival, police recovered a silver handgun, a shell casing, and a bullet fragment. (Id. at ¶ 13.) Police also recovered a straw containing traces of white powder and $1,750 in cash from Plaintiff's person. (Id. at ¶ 26.) As a precautionary measure, the police officers detained Plaintiff while

2

they talked with witnesses and conducted a further investigation of the scene in an effort to ascertain Plaintiff's role in the disturbance. (Id. at ¶ 11.) After police assured Plaintiff that he was not under arrest, Plaintiff consented to being handcuffed for safety reasons while officers performed a warrant check and preliminary investigation. (See id. at ¶¶ 11, 17, 18, 28, 29.)

After an initial evaluation by Emergency Medical Services (EMS) technicians, Plaintiff was placed in an ambulance, with the assistance of a police officer, and transported to Brookdale Hospital for treatment. (See id. at ¶ 15.) According to hospital personnel, Plaintiff was behaving irrationally, attempted to strike a doctor with a shoe, and required medication to sedate him. (Id. at ¶¶ 19, 21, 22, 38, 40, 44.) Plaintiff also struck a police officer who had attempted to restrain Plaintiff on the hospital bed, causing a minor injury to the officer's hand. (Id. at ¶¶ 41, 42, 46.) Subsequent medical tests revealed the presence of alcohol and cocaine in Plaintiff's system. (Id. at ¶ 39.)

The officer whom Plaintiff struck informed his supervisors of what had transpired, upon which Plaintiff was arrested for second degree assault and criminal possession of a controlled substance in the seventh degree.[1] (Id. at ¶¶ 47, 51, 52, 54.) Although the officer swore out a criminal court affidavit attesting to Plaintiff's assault, he failed to appear in court in connection with the case. (Id. at ¶¶ 55, 59, 60.) The charge against Plaintiff was later dismissed on motion of the District Attorney. (Id. at ¶

---

[1] The District Attorney's office charged Plaintiff with third degree assault. (Defs.' Local Rule 56.1 Statement at ¶¶ 56, 58.)

61.)

**DISCUSSION**

**I.    Standard of Review for Unopposed Motion for Summary Judgment**

Under Rule 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court's responsibility in assessing the merits of a summary judgment motion is not to try the issues of fact, but rather to "'determine whether there *are* issues of fact to be tried.'" Sutera v. Schering Corp., 73 F.3d 13, 16 (2d Cir. 1995) (quoting Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 244 (2d Cir. 1984)). The Court must draw all reasonable inferences and resolve all ambiguities in the nonmoving party's favor, and construe the facts in the light most favorable to the nonmoving party. See Anderson, 477 U.S. at 255; see also Sutera, 73 F.3d at 16.

The same standard applies where, as here, the nonmoving party "chooses the perilous path" of failing to oppose a summary judgment motion. Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001); Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.,

4

373 F.3d 241, 244 (2d Cir. 2004) ("[W]e hold that the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment. Instead, the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law.") The district court "may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." Vermont Teddy Bear Co., 373 F.3d at 244.

## II.    Plaintiff's Federal Claims

### A.    *False Arrest*

Plaintiff alleges that he was falsely arrested and wrongfully prosecuted for assaulting a police officer at the hospital where he was treated.[2] (Compl. at ¶ 14.) A plaintiff will prevail on a false arrest claim only if it can be demonstrated that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003). Probable cause is a complete defense to an action for false arrest under federal and state law. See, e.g., Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (stating that "a § 1983 claim for false arrest, resting on the Fourth Amendment right of

---

[2] Although Plaintiff alleges that Defendants Vargas, Braun and Chiofalo falsely arrested Plaintiff for allegedly resisting arrest (Compl. at ¶ 14), Plaintiff was never arrested or prosecuted on a charge of resisting arrest. See Defs.' Local Rule 56.1 Statement at ¶ 51.)

P-049

an individual to be free from unreasonable seizures, including arrest without probable cause,. . . is substantially the same as a claim for false arrest under New York law.") Probable cause to arrest exists when officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852.

The undisputed material facts of this case support Defendants' contention that probable cause existed to arrest and prosecute Plaintiff. First, Plaintiff was not placed under arrest prior to being transported to the hospital for treatment of his gunshot wound. Although Plaintiff was handcuffed at the scene of the incident while police officers attempted to conduct a preliminary investigation, it is well established that law enforcement officials may temporarily detain individuals if they have a "reasonable suspicion" that the individual was involved in or has knowledge of facts relevant to a recent crime. See Hernandez v. City of Rochester, 260 F.Supp. 2d 599, 606 (W.D.N.Y. 2003); People v. Hernandez, 177 Misc. 2d 882, 679 N.Y.S. 2d 790, 793 (Sup. Ct. Bronx County 1998). According to the record, police officers on the scene communicated to Plaintiff that he was being detained temporarily and that he would not be arrested unless they learned of any outstanding warrants. (Defs.' Local Rule 56.1 Statement at ¶ 17.) The undisputed facts further indicate that Plaintiff, after being advised on these matters by the police, "agreed to be handcuffed while a warrant check was performed." (Id. at ¶

6

18.)

Second, the circumstances of Plaintiff's actual arrest, which did not take place until after his arrival at Brookdale Hospital, strongly suggest the existence of probable cause. Hospital staff who witnessed the events precipitating Plaintiff's arrest stated that Plaintiff tried to strike one of the emergency room physicians with a shoe. (Id. at ¶ 40.) In response, a police officer and hospital staff attempted to restrain Plaintiff, during which the officer sustained a minor injury to his hand. (Id. at ¶¶ 41, 42, 46.) Ultimately, physical restraints and medication were used to subdue Plaintiff. (Id. at ¶ 44.) In addition, it is uncontested that Defendants lawfully recovered from Plaintiff's person a straw containing traces of a white powdery substance, later determined to be cocaine, and that subsequent laboratory tests revealed the presence of cocaine in Plaintiff's system. (See id. at ¶¶ 26, 39.)

In light of these undisputed facts, it is clear that probable cause existed for Plaintiff's arrest for assault and criminal possession of a controlled substance. Given the established existence of probable cause to arrest in this case, this Court finds Plaintiff's false arrest claim to be wholly without merit and it is therefore dismissed.

B.    *Malicious Prosecution*

Plaintiff claims that he was wrongfully prosecuted until charges were dismissed against him, on June 21, 2000. (Compl. at ¶ 14.) The Second Circuit has determined that actions for malicious prosecution may only succeed where a plaintiff can prove that

7

(1) the defendants initiated or continued a criminal proceeding, (2) the proceeding resulted in a favorable result for the plaintiff, (3) the defendants lacked probable cause to commence the proceeding in the first instance, and (4) the defendant's decision to prosecute was motivated by actual malice toward the plaintiff. See Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003). In the context of a claim of malicious prosecution, probable cause focuses on a belief that criminal charges could be successfully prosecuted. See Posr v. Court Officer Shield No. 207, 180 F.3d 409, 417 (2d Cir. 1999). "[T]he existence of probable cause to arrest is a complete defense to a claim of malicious prosecution." Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003). Given the Court's previous finding that probable cause existed to arrest Plaintiff, Plaintiff's malicious prosecution claim is dismissed without merit.

    C.    *Unreasonable Seizure*

Plaintiff contends that his Fourth Amendment right to be free from an unreasonable seizure was violated when Defendants arranged for him to be transported to the hospital for treatment of his gunshot wound against Plaintiff's will. (Compl. at ¶ 14.) This claim must be considered in light of an objective reasonableness standard which includes a review of the totality of circumstances. See Anderson v. Branen, 17 F.3d 552, 558 (2d Cir. 1994); see also Houston v. New York State Troopers, 96 Civ. 1587, 1997 U.S. Dist. LEXIS 15999 (S.D.N.Y. Oct. 15, 1997); Lennon v. Miller, 66 F.3d 416, 425 (2d Cir. 1995).

P-049

Plaintiff does not dispute the that he did, in fact, sustain a gunshot wound to his leg as a result of the altercation that occurred on March 19, 2003. In light of all the surrounding circumstances, police officers were reasonably justified in taking action to ensure that Plaintiff received prompt medical attention. While the Supreme Court and courts in the Second Circuit have recognized a competent person's liberty interest in refusing unwanted medical treatment, see e.g., Cruzan v. Director, MO Dep't of Health, 497 U.S. 261 (1990); Green v. City of New York, 2004 U.S. Dist. LEXIS 5 at *33 (S.D.N.Y. Jan. 5, 2004), the facts of the instant case indicate that when police initially encountered Plaintiff at the scene of the shooting, he was "angry, incoherent, and physically and verbally aggressive" toward the ambulance technicians who were attempting to treat him. (Defs' Local Rule 56.1 Statement at ¶¶ 23, 24.) Moreover, officers observed, and subsequent medical tests confirmed, that Plaintiff was intoxicated with both alcohol and cocaine when police first approached him. (Id. at ¶¶ 28, 39.) In this context, it is clear that the officers acted reasonably in handcuffing Plaintiff for safety reasons and transporting him to Brookdale Hospital for treatment.

Defendants also point out, and this Court agrees, that the state of New York imposes an affirmative duty on law enforcement officers to provide medical or other assistance for those they reasonably believe are in need. See People v. Mitchell, 383 N.Y.S.2d 246, 248 (1976); People v. De Bour, 386 N.Y.S.2d 375, 381-382 (1976). This obligation is consistent with the notion that a person's Fourth Amendment rights are not

9

implicated in emergency situations, such as this, where police officers are attempting to assist the person, as opposed to seizing evidence or effectuating an arrest. People v. Molnar, 98 N.Y.2d 328, 746 N.Y.S.2d 673, 676 (2002) (citing Mincey v. Arizona, 437 U.S. 385, 392 (1978)). Consequently, Plaintiff's Fourth Amendment claim of an unreasonable seizure is dismissed without merit.

### D. *Fourteenth Amendment*

Plaintiff's claims that Defendants violated his Fourteenth Amendment rights to due process and equal protection of the laws. (Compl. ¶ at 17.) The substantive due process guarantee of the Fourteenth Amendment protects individuals from "conscience-shocking" exercises of power by government actors, see Johnson v. Newburn Enlarged Sch. Dist., 239 F.3d 246, 252 (2d Cir. 2001), regardless of "whether the fault lies in a denial of fundamental procedural fairness, or in the exercise of power without any reasonable justification in the service of a legitimate government interest." County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998). Given the countervailing government interest in preserving life, see Cruzan v. Director, MO Dep't of Health, 497 U.S. 261, 280 (1990), this Court declines to find that police engaged in a "conscience-shocking" exercise of power in arranging for medical treatment for Plaintiff, a shooting victim whom police found to be irrational and incoherent, against his will. Accordingly, Plaintiff's substantive due process claim is dismissed without merit.

In order to succeed on a Fourteenth Amendment Equal Protection claim pursuant

10

to 42 U.S.C. § 1983, a plaintiff must show purposeful discrimination directed at an identifiable, suspect class. See E.g. Giano v. Senkowski, 54 F.3d 1050, 1057 (2d. Cir. 1995); McClesky v. Kemp, 481 U.S. 279, 292 (1987); Kadrmas v. Dickinson Pub. Schs., 487 U.S. 450, 457-458 (1988). Put another way, a plaintiff must prove that state actors have treated similarly situated parties differently. Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Here, Plaintiff fails to meet that burden.

Plaintiff, who was heavily intoxicated, was involved in a serious altercation with another individual and was in possession of illegal narcotics when police encountered him. Law enforcement officials acted reasonably by restraining Plaintiff while they conducted an investigation of the scene, transporting Plaintiff to the hospital for treatment, and arresting Plaintiff only after he assaulted a police officer and a medical staff person at Brookdale Hospital. Plaintiff has not alleged a single fact suggesting that he was treated differently than any other person would have been under similar circumstances. Hence, Plaintiff's equal protection claim is dismissed without merit.

E.    *Conspiracy*

Plaintiff also alleges that the police officers in this case "conspired together to violate plaintiff's rights" and that the alleged "conspiracy included the overt acts of falsely detaining, arresting, imprisoning and searching" Plaintiff. (Compl. at ¶ 20.) However, it is clear that Plaintiff's claim fails to satisfy the requirements of both 42 U.S.C. § 1983 and § 1985. In order to survive a motion for summary judgment, a

11

plaintiff seeking relief pursuant to § 1983 must allege: (1) an agreement between a state actor and a private party;( 2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. Ciambriello v. County of Nassau, 292 F.3d 307, 324-325 (2d Cir. 2002); Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). Claims pursuant to 42 U.S.C. § 1985 are only cognizable where Plaintiff alleges: (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). In addition, conspiracy claims brought under § 1985 must allege "invidious discriminatory animus" as the motivation behind the conspiracy. Mian v. Donaldson Lufkin & Jenrette Sec., 7 F.3d 1085, 1088 (2d Cir. 1993).

In this case, there is absolutely no evidence of any unlawful agreement or conspiracy. Even assuming *arguendo* that such an agreement or conspiracy did exist, Plaintiff's claim would still fail because Plaintiff suffered no injuries, deprivations, or damages stemming from his arrest or prosecution. Furthermore, the recovery of cocaine from Plaintiff's person during a preliminary search by police substantially undermines Plaintiff's claim that officers conspired to unlawfully detain, search, arrest, and imprison

12

Plaintiff. Consequently, Plaintiff's conspiracy claims are dismissed without merit.[3]

### F. *Failure to Perform Affirmative Duty to Intervene/Deliberate Indifference*

Plaintiff alleges that unidentified police officers failed to intervene for his protection. (Compl. at ¶ 27.) As indicated above, Plaintiff has failed to establish any constitutional violations stemming from his arrest and/or prosecution. It is well settled in the Second Circuit that law enforcement officers' affirmative duty to intervene exists only where a person's constitutional rights have been violated. Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994); Foy v. City of New York, 2004 WL 2033074 at *3 (S.D.N.Y. 2004) ("[T]here can be no failure to intervene where there was no constitutional violation."). In the instant case, there was no behavior requiring intervention by any of the named defendants. Therefore, Plaintiff's claim must fail and is dismissed without merit.

### G. *Monell Claim*

Plaintiff claims that the City of New York should be held liable under the principles established in Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95 (1978). (Compl. at ¶¶ 30-32.) To plead a valid Monell claim, a plaintiff must offer proof that: (1) an official policy or custom exists; that (2) caused the plaintiff to be subjected to; (3) the denial of a constitutional right. Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir.

---

[3] Plaintiff's conspiracy claims could also be dismissed on the ground that Plaintiff's allegations are conclusory and lacking in any factual support. See Dwares v. City of New York, 985 F.2d 94, 100 (2d. Cir. 1993).

P-049

1983). Given this Court's previous findings that Plaintiff was not denied any constitutional right, Plaintiff's <u>Monell</u> claim fails and is dismissed without merit.[4] <u>Id.</u> at 397; <u>Wyent</u>, 101 F.3d at 852.

## III.  Plaintiff's State Law Claims

Given that this Court's dismissal of all of Plaintiff's federal constitutional claims, it declines to exercise pendant jurisdiction over Plaintiff's state law claims. <u>See</u> <u>City of Chicago v. Int'l Coll. of Surgeons</u>, 522 U.S. 156, 164-65 (1997); <u>Pitchell v. Callan</u>, 13 F.3d 545, 549 (2d Cir. 1994); <u>Nolan v. Meyer</u>, 520 F.2d 1276, 1280 (2d Cir. 1975); <u>Marcus v. AT&T Corp.</u>, 138 F.3d 46, 57 (2d Cir. 1998). Accordingly, Plaintiff's state law claims are hereby dismissed.

CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment is GRANTED and Plaintiff's Complaint is DISMISSED in its entirety.

SO ORDERED.
Dated: April 22, 2005
     Brooklyn, NY

          Senior U.S.D.J.

---

[4] Defendants argue further that Plaintiff's <u>Monell</u> claim fails to show the existence of unconstitutional municipal policy with regard to treatment of citizens by law enforcement officials. et it is unnecessary to reach this issue since the Court has found that no constitutional deprivation exists upon which to base such claim.

14